# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCO J. ESPINOSA,
            *Plaintiff-Appellant,*

v.

UNITED STUDENT AID FUNDS, INC.,
            *Defendant-Appellee.*

No. 06-16421

D.C. No.
CV-04-00447-RCC

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted April 16, 2008
Submission Vacated June 24, 2008
Resubmitted August 29, 2008
San Francisco, California

Filed October 2, 2008
Amended December 10, 2008

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima
and N. Randy Smith, Circuit Judges.

Opinion by Chief Judge Kozinski

16181

## COUNSEL

Michael J. Meehan, Munger Chadwick, Tucson, Arizona; James L. Robinson, Jr., Robinson & Rylander, P.C., Tucson, Arizona, for the plaintiff-appellant.

Madeleine C. Wanslee, Gust Rosenfeld P.L.C., Phoenix, Arizona, for the defendant-appellee.

## ORDER

The opinion filed October 2, 2008 is amended as follows:

Page 14031, Line 32

> After the sentence ending with "persuasive," insert: "Rather, we agree with Judge Lundin that "*Pardee* and *Andersen* stand soundly for the better-reasoned principle that notice of how the Chapter 13 plan affects creditors' rights is all that the Constitution, the Bankruptcy Code and the Bankruptcy Rules require to bind creditors to the provisions of a confirmed plan under § 1327(a)." Keith M. Lundin, *Chapter 13 Bankruptcy* § 229.1 (3d ed. 2000 & Supp. 2004)."

Page 14031, Line 32

> Before the sentence beginning with "Seeing no reason," start a new paragraph and insert: "Funds also relies heavily on *Tennessee Student Assistance Corp.* v. *Hood*, 541 U.S. 440 (2004). But as Judge Lundin explains, *Hood* is at best unhelpful and more likely undermines Funds's argument:
>
>> Admittedly, sovereign immunity, not the preclusive effect of confirmation, was the

issue in *Hood*; but the point remains that the Supreme Court recognized in *Hood* that an adversary proceeding initiated by complaint and summons is not a statutory or constitutional prerequisite to adjudication of the discharge of a student loan. Many of the cases taking issue with *Pardee* and *Andersen* declare the contrary view that the discharge of a student loan by any procedure other than adversary proceeding violates due process. This premise is not consistent with *Hood*.

Keith M. Lundin, *Chapter 13 Bankruptcy* § 346.1 (3d ed. 2000 & Supp. 2004)."

Page 14034, Line 4

After the sentence ending with "proof of claim," insert: "Because "due process does not require actual notice," *Jones* v. *Flowers*, 547 U.S. 220, 225 (2006), it follows a fortiori that actual notice satisfies due process. We find the argument that the Constitution requires something *more* than actual notice strained to the point of the bizarre."

Page 14034, Line 4

Start a new paragraph at the sentence beginning with "The notices"

Page 14034, Lines 4-5

Replace "Funds did receive" with "Funds received"

Page 14036 n.6, Lines 25-26

Delete "; *County of Ventura Tax Collector* v. *Brawders* (*In re Brawders*), 325 B.R. 405, 414 (9th Cir. BAP 2005)"

Page 14037, Lines 26-27

Replace "If the creditor fails to object" with "If the creditor is notified and fails to object"

The petition for rehearing en banc is denied. *See* Fed R. App. P. 35. No further petitions may be filed and all pending motions are denied.

---

**OPINION**

KOZINSKI, Chief Judge:

In our earlier opinion in this case, *Espinosa* v. *United Student Aid Funds, Inc.*, 530 F.3d 895 (9th Cir. 2008), we remanded to the bankruptcy court for a determination under Rule 60(a) whether exclusion of petitioner's student debt from its discharge order was the result of a clerical error. The bankruptcy court confirmed that:

> the inclusion of paragraph 1(c) in the Discharge Order [which exempted student loan obligations from the general discharge] was inserted because of a clerical mistake, because it was the clear intent of the Court, as reflected in the Chapter 13 Plan, as approved by the Court, that all student loan-related obligations were to be discharged if the debtor successfully performed and completed the Plan.

Order of August 20, 2008. We thus finally have presented to us the question that the parties briefed and argued: Whether a debtor may obtain discharge of a student loan by including

it in a Chapter 13 plan, if the creditor fails to object after notice of the proposed plan.

## Facts

Espinosa filed a Chapter 13 petition and proposed plan that provided for repayment of $13,250 in student loans to United Student Aid Funds, Inc. (Funds). Funds was notified and filed a proof of claim in the amount of $17,832.15.[1] The bankruptcy court eventually confirmed the plan, and the Chapter 13 Trustee mailed Funds a notice advising it that "[t]he amount of the claim filed differs from the amount listed for payment in the plan. Your claim will be paid as listed in the plan." The notice also contained the following warning:

> If an interested party wishes to dispute the above stated treatment of the claim, it is the responsibility of the party to address the dispute. *The claim will be treated as indicated above unless the Trustee receives within 30 days from this mailing, a written request for different treatment.* The request should set forth the specific grounds for alternative treatment and should be filed with the Clerk of the Court, with a copy mailed to the Trustee at [address deleted]. [Emphasis added.]

Funds did not object and Espinosa successfully completed the plan. The bankruptcy court then granted him a discharge.

Three years later, Funds began intercepting Espinosa's income tax refunds to satisfy the unpaid portion of the student loan. Espinosa petitioned the bankruptcy court for an order holding Funds in contempt for violating the discharge injunction. *See* 11 U.S.C. § 524(a)(2). Funds cross-moved for relief from the bankruptcy court's order confirming the plan, on the

---

[1]The difference between these two amounts appears to be interest. *See* n.4 *infra*.

ground that the order had been entered in violation of Funds's rights under the Bankruptcy Code and Rules.

This is the nub of Funds's argument: To initiate bankruptcy proceedings, a Chapter 13 debtor must notify creditors by mail of the deadline for filing objections and the date of the confirmation hearing. Fed. R. Bankr. P. 2002(b). Espinosa did this. However, student loans may not be discharged under Chapter 13 unless the debtor can show "undue hardship," 11 U.S.C. § 523(a)(8), and such a showing can only be made in an adversary proceeding. *See* Fed. R. Bankr. P. 7001(6). To initiate an adversary, the debtor must file a complaint, *id.* 7003, which must be served on the student loan creditor along with a summons, *id.* 7004. Espinosa didn't do this. Instead Espinosa simply listed the student debt in his Chapter 13 plan, which the bankruptcy court confirmed. Espinosa then made the payments specified in the plan, and the bankruptcy court eventually entered a discharge order. Funds based its motion for relief from this order on Espinosa's failure to initiate an adversary and his consequent failure to obtain a judicial determination of undue hardship.

The bankruptcy court rejected Funds's argument. It held that Funds had violated the discharge injunction and ordered Funds to cease all collection activity against Espinosa. It also denied Funds's motion for relief from the confirmed plan, holding that the plan became final when it was confirmed and that Funds should have objected to any procedural defect before confirmation. Funds appealed to the district court, which reversed. According to the district court, Funds was denied due process because it wasn't served with a complaint and summons. Espinosa appeals.

## Analysis

Funds makes both a statutory and a constitutional argument for setting aside the confirmed bankruptcy plan. These argu-

ments turn on the fact that Espinosa didn't obtain a judicial determination of undue hardship.

**[1] 1.** *Statutory Argument*. Funds argues that the bankruptcy court should have set aside Espinosa's discharge because Espinosa didn't comply with the additional procedures required by the Bankruptcy Code and Rules to discharge student debt. *Great Lakes Higher Educ. Corp.* v. *Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir. 1999), which is on all fours with our case, forecloses this argument. As here, the student loan debtor in *Pardee* didn't employ these additional procedures, and the creditor there didn't file any objections to the proposed Chapter 13 plan, which provided that the student loan debt would be discharged. *Id.* at 1084. The bankruptcy court confirmed the plan, and eventually discharged the student loan debt. *Id.* The creditor subsequently argued that the confirmed plan wasn't final under 11 U.S.C. § 1327(a), because the creditor wasn't given the benefit of the additional procedures applicable to the discharge of student loans. *Pardee*, 193 F.3d at 1086. We firmly rejected this argument, following the Tenth Circuit's lead in *Andersen* v. *UNIPAC-NEBHELP* (*In re Andersen*), 179 F.3d 1253 (10th Cir. 1999). In essence, *Pardee* held that a discharge is a final judgment and cannot be set aside or ignored because a party suddenly claims, years later, that the trial court committed an error.

Two circuits have disagreed with *Pardee*, and accepted Funds's statutory argument. *See Educ. Credit Mgmt. Corp.* v. *Mersmann* (*In re Mersmann*), 505 F.3d 1033, 1047-49 (10th Cir. 2007) (en banc) (overruling *Andersen*); *Whelton* v. *Educ. Credit Mgmt. Corp.*, 432 F.3d 150, 154 (2d Cir. 2005). These opinions divine some sort of conflict between the Bankruptcy Code's finality provision, 11 U.S.C. § 1327(a), and those provisions of the Code and Rules that call for an adversary proceeding before a student loan debt may be discharged. We see no such conflict; both provisions can operate fully, within their proper spheres.

The provision giving student loan creditors a right to special procedures comes into play when the case is pending before the bankruptcy court. If a debtor proposes to discharge a student loan debt without invoking the special procedures applicable to such debts, the creditor can object to the plan until the debtor shows undue hardship in an adversary proceeding.

But there are many reasons a student loan creditor might not object to such a Chapter 13 plan. The creditor might, for example, believe that the debtor would be able to make a convincing showing of undue hardship, and thus see no point in wasting the debtor's money, and its own, litigating the issue. Or, the creditor may decide that a Chapter 13 plan presents its best chance of collecting most of the debt, rather than spending years trying to squeeze blood out of a turnip. Or, the creditor may hope that the debtor will make some payments on the plan but ultimately fail to complete it, in which case the creditor will have collected a portion of the debt and still be free to collect the rest later.[2] Or, the creditor may overlook the notice or fail to understand its legal implications.

**[2]** Regardless, when the creditor is served with notice of the proposed plan, it has a full and fair opportunity to insist on the special procedures available to student loan creditors by objecting to the plan on the ground that there has been no undue hardship finding. Rights may, of course, be waived or

---

[2]This is not an idle hope; an estimated two-thirds of Chapter 13 plans ultimately fail. Scott F. Norberg & Andrew J. Velky, *Debtor Discharge and Creditor Repayment in Chapter 13*, 39 Creighton L. Rev. 473, 509 n.74 (2006) ("[D]ata . . . show a continuation of the [Chapter 13 plan] failure rate at about two-thirds.") (citing Lynn M. LoPucki, *Common Sense Consumer Bankruptcy*, 71 Am. Bankr. L.J. 461, 474-75 (1997)); National Bankruptcy Review Commission, *Bankruptcy: The Next Twenty Years* 233 (1997), *available at* http://govinfo.library.unt.edu/nbrc/report/08consum.pdf ("For more than a decade, two-thirds of all Chapter 13 plans have failed before the debtor completes payments, and sometimes before unsecured creditors have received anything at all.").

forfeited, if not raised in a timely fashion. This doesn't mean that these rights are ignored, or that a judgment that is entered after a party fails to assert them conflicts with the statutory scheme or is somehow invalid.

**[3]** The Bankruptcy Code's finality provision comes into play much later in the process, after the bankruptcy proceedings come to an end. A bankruptcy discharge order is a final judgment and, even without the special protection of section 1327(a), a final judgment cannot be ignored or set aside just because it was the result of an error. Errors committed during the course of litigation must be corrected by way of a timely appeal. We have therefore "recognized the finality of confirmation orders even if the confirmed bankruptcy plan contains illegal provisions." *Pardee*, 193 F.3d at 1086 (citing *Trulis* v. *Barton*, 107 F.3d 685 (9th Cir. 1995), *Lawrence Tractor Co.* v. *Gregory* (*In re Gregory*), 705 F.2d 1118 (9th Cir. 1983), and numerous other cases from across the country). Were the rule otherwise, no judgment would ever be conclusive, as a party aggrieved by it could endlessly re-litigate errors supposedly committed by the trial court.

**[4]** After a judgment (including a discharge) is finalized, and the time for appeal has run, the judgment can only be reconsidered in the limited circumstances provided by Rule 60(b). *Mersmann* and *Whelton* pay scant attention to 60(b) or the caselaw thereunder, which strictly cabins the circumstances under which a judgment can be reopened after it becomes final. *See, e.g.*, *Gaydos* v. *Guidant Corp.* (*In re Guidant Corp. Implantable Defibrillators Products Liability Litig.*), 496 F.3d 863, 866 (8th Cir. 2007) ("Rule 60(b) authorizes relief in only the most exceptional of cases."); *United States* v. *Hartwell*, 448 F.3d 707, 722 (4th Cir. 2004) ("[W]hen deciding whether an order is 'void' under . . . Rule 60(b)(4) for lack of subject matter jurisdiction, courts must look for the rare instance of a clear usurpation of power."); *Kramer* v. *Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) ("Rule 60(b)(6) should be only sparingly used and may not be

employed simply to rescue a litigant from strategic choices that later turn out to be improvident.") (internal quotation marks omitted). Instead, both circuits elide the requirements of 60(b) by treating this as a question of res judicata. *Whelton*, 432 F.3d at 155; *Mersmann*, 505 F.3d at 1049-50.[3]

**[5]** This analysis is wrong on two counts. First, what we have here is not a question of res judicata—giving the judgment in the bankruptcy case preclusive effect in another case. The debtor here—like those in *Mersmann* and *Whelton*—sought to reopen the original case in order to enforce the discharge injunction, which came into force by operation of law upon entry of the discharge. A discharge injunction does not operate by way of res judicata; it is, rather, an equitable remedy precluding the creditor, on pain of contempt, from taking

---

[3]*Mersmann* also has what it calls a statutory argument, 505 F.3d at 1047-49, but this passage in the opinion proves nothing more than that the order confirming the plan and the subsequent discharge probably were erroneous and might have been successfully appealed. The court doesn't explain what difference this makes when dealing with a judgment that long ago became final. Even an incorrect judgment is binding, unless and until it is re-opened and modified. This portion of the *Mersmann* opinion thus carries no independent force because it proves something that is both obvious and beside the point.

*Whelton* appears to have been misled by a stray remark in one of our opinions, *Enewally* v. *Washington Mutual Bank* (*In re Enewally*), 368 F.3d 1165, 1173 (9th Cir. 2004), to the effect that "the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding." This statement was correct in the circumstances presented in *Enewally*, where "the bankruptcy court specifically reserved the question at issue [during plan confirmation] because it had been raised via an adversary proceeding." *Id.* It is true, of course, that a plan can have no preclusive effect on matters that have been specifically reserved for resolution by way of an ongoing adversary proceeding. We had no occasion in *Enewally* to consider the situation where there is no adversary and the case is resolved entirely by confirmation of the plan. Anything *Enewally* has to say as to matters not presented in that case is, in any event, dicta and thus not binding on us. Reading *Enewally* broadly to speak to that hypothetical situation would also bring it into conflict with *Pardee*, which addresses precisely this issue.

*any* actions to enforce the discharged debt. *See* 2 Collier Bankruptcy Manual (3d rev. ed.) ¶ 524.02[2][c] ("Civil contempt is the normal sanction for violations of the discharge injunction.") (footnote omitted); *id.* ¶ 524.02[2] (discharge "provides for a broad injunction against not only legal proceedings, but also any other acts to collect a discharged debt as a personal liability of the debtor"). This includes garnishments, attachments, self-help and all other means of collection —not merely the filing of another lawsuit. 11 U.S.C. § 524(a)(2); 2 Collier Bankruptcy Manual (3d rev. ed.) ¶ 524.02[2]. A discharge judgment could also have res judicata effect, if the creditor were to try to enforce the debt by bringing a post-discharge lawsuit, but the discharge injunction prevents him from even commencing the second suit where the res judicata issue could be litigated. There was no second lawsuit in our case, nor (insofar as we can tell) in *Mersmann* and *Whelton*. Res judicata thus has no application to a case like ours, or those considered by the Second and Tenth Circuits.

Even if res judicata *were* the relevant doctrine, neither *Mersmann* nor *Whelton* offer any persuasive reasons why the discharge order here should be denied full preclusive effect. Both cases seem to go off on the theory that the student loan debt couldn't be discharged by the Chapter 13 plan because the creditor was not served with a complaint and summons, as required for the commencement of an adversary proceeding. *Whelton*, 432 F.3d at 155; *Mersmann*, 505 F.2d at 1049-50. But the creditor in our case (as in those other cases) did get proper notice of the proposed Chapter 13 plan, and so knew perfectly well that if the plan were approved and satisfied, the debtor would be granted a discharge of the student debt listed in the plan.[4] Had the creditor wanted to insist on

---

[4]In our case, the creditor was served with the "Notice of Commencement of Case Under Chapter 13 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates." Attached to this notice was a copy of the proposed Chapter 13 plan, which carried the following prominent warn-

an adversary, it could have objected to the Chapter 13 plan on the ground that there was no judicial finding of undue hardship. Had Funds so objected, the bankruptcy court would have been required to disapprove the plan and Espinosa would have been put to the hard choice of commencing an adversary or abandoning Chapter 13. But Funds didn't object to the plan and didn't appeal the order confirming the plan, as it well could have. *See In re Gregory*, 705 F.2d at 1121. Instead, it accepted the payments made by the debtor during the plan's life and then acted as if the whole thing never happened. *See* p.14024 *supra*.

---

ing: "WARNING IF YOU ARE A CREDITOR YOUR RIGHTS MAY BE IMPAIRED BY THIS PLAN." There follows a detailed description of debtor's assets and liabilities, a payment schedule and a great deal of other pertinent information. One section of the plan is titled "Education Loan(s)" and lists all of Funds's loans, for a total of $13,250. The plan specifies that this amount should be paid in full, followed by a paragraph stating as follows:

> The amounts claimed by the United Student Loan Aid Funds, Inc., *et. al.* for capitalized interest, penalties, and fees shall not be paid for the reasons that the same are penalties and not provided for in the loan agreement between the Debtor and the lender.

The subsequent paragraph provides as follows: "Any amounts or claims for student loans unpaid by this Plan shall be discharged." Paragraph 6 of the plan is titled "OBJECTIONS" and provides as follows: "Objections, by any creditor, must be filed seven (7) days prior to the hearing on Confirmation of Plan along with a copy to the Trustee and Debtor's counsel." Paragraph 7 is titled "PROOF OF CLAIM" and states as follows:

> As a creditor you must file your proof of claim in order to get paid the amounts provided for in this plan. If you do not file your proof of claim by the deadline date you will not receive anything even if the Plan provides for payment. The deadline for filing proofs of claim is set forth in the Notice Of Commencement [Of] Case Under Chapter 13 Of The Bankruptcy Code, Meeting of Creditors, And Fixing of Dates which you have received from the Clerk of the United States Bankruptcy Court.

As noted, Funds filed a proof of claim, but no objection to the plan.

It makes a mockery of the English language and common sense to say that Funds wasn't given notice, or was somehow ambushed or taken advantage of. The only thing the creditor was not told is that it could insist on an adversary proceeding and a judicial determination of undue hardship. But that's less a matter of notice and more of a tutorial as to what rights the creditor has under the Bankruptcy Code—a long-form *Miranda* warning for bankers. If that were the standard for adequate notice, every notification under the Bankruptcy Code would have to be accompanied by Collier's Treatise, lest the creditor overlook some rights it might have under the Code.

*Mersmann* recognizes this problem when it states (without citation) that this kind of notice is somehow different from ordinary notices because it "goes to the heart of the creditor's notice of the bankruptcy plan itself." 505 F.3d at 1050. But it's not clear why letting the creditor know, in plain terms, that its rights will be impaired by the proposed plan—and then leaving it up to the creditor and his lawyers to figure out what objections or remedies are available—doesn't satisfy the Tenth Circuit's "heart of the . . . notice" standard. After all, we aren't talking here about destitute widows and orphans, or people who don't speak English or can't afford a lawyer. The creditors in such cases are huge enterprises whose business it is to administer the very kinds of debts here in question. If this kind of notice to sophisticated parties who have ample resources to protect their rights is inadequate for purposes of res judicata, then the concept of notice has no meaning and res judicata is a fairy tale.

While we are bound by *Pardee*, we have taken a close look at the contrary holdings of our sister circuits in order to determine whether we have strayed off course, in which case we would call for rehearing en banc to correct our caselaw. But we don't find the reasoning of the two other circuits persuasive. Rather, we agree with Judge Lundin that "*Pardee* and *Andersen* stand soundly for the better-reasoned principle that

notice of how the Chapter 13 plan affects creditors' rights is all that the Constitution, the Bankruptcy Code and the Bankruptcy Rules require to bind creditors to the provisions of a confirmed plan under § 1327(a)." Keith M. Lundin, *Chapter 13 Bankruptcy* § 229.1 (3d ed. 2000 & Supp. 2004).

Funds also relies heavily on *Tennessee Student Assistance Corp.* v. *Hood*, 541 U.S. 440 (2004). But as Judge Lundin explains, *Hood* is at best unhelpful and more likely undermines Funds's argument:

> Admittedly, sovereign immunity, not the preclusive effect of confirmation, was the issue in *Hood*; but the point remains that the Supreme Court recognized in *Hood* that an adversary proceeding initiated by complaint and summons is not a statutory or constitutional prerequisite to adjudication of the discharge of a student loan. Many of the cases taking issue with *Pardee* and *Andersen* declare the contrary view that the discharge of a student loan by any procedure other than adversary proceeding violates due process. This premise is not consistent with *Hood*.

Keith M. Lundin, *Chapter 13 Bankruptcy* § 346.1 (3d ed. 2000 & Supp. 2004). Seeing no reason to change course, we continue to follow *Pardee*.

**2.** Funds also argues that the discharge order is void because Funds was denied due process, as it was never served with a complaint and summons as required by Fed. R. Bankr. P. 7004. Three circuits have held, like the district court below, that a student loan debtor's failure to commence an adversary proceeding by serving the student loan creditor with a complaint and summons, denies the creditor due process. *Ruehle* v. *Educ. Credit Mgmt. Corp.* (*In re Ruehle*), 412 F.3d 679, 682-83 (6th Cir. 2005); *In re Hanson*, 397 F.3d 482, 486 (7th Cir. 2005); *Banks* v. *Sallie Mae Servicing Corp.* (*In re Banks*), 299 F.3d 296, 302-03 (4th Cir. 2002). Because we did not

consider this argument in *Pardee* or any other case, circuit law does not preclude us from addressing it.

We begin our analysis with Rule 60(b), the gateway for setting aside any final judgment. Because the judgment is more than a year old, the first three subsections of 60(b) cannot be relied on, Fed. R. Civ. P. 60(c)(1), and are inapplicable in any event. Subsection 5, dealing with satisfied judgments, is similarly inapplicable. Subsections 4 and 6, however, are possibilities: If the opposing party is given no notice at all of the lawsuit, or notice is so inadequate as to violate due process, any judgment entered against that party would be void (subsection 4), and such constitutionally deficient service would certainly be a just reason for relief from the judgment (subsection 6). *See, e.g.*, *Owens-Corning Fiberglass Corp.* v. *Ctr. Wholesale, Inc.* (*In re Ctr. Wholesale, Inc.*), 759 F.2d 1440, 1448-51 (9th Cir. 1985); *Baldwin* v. *Credit Based Asset Servicing and Securitization*, 516 F.3d 734, 737-38 (8th Cir. 2008).

**[6]** The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Mullane* v. *Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). *In re Gregory* rejected an argument that Chapter 13 notice of a proposed plan is constitutionally defective because it does not apprise each creditor of how its own claim will be disposed of by the plan:

> When the holder of a large, unsecured claim such as Lawrence receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, *it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril.* "Whatever is notice enough to excite attention and

> put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it." *D.C. Transit Systems, Inc.* v. *United States*, 531 F.Supp. 808, 812 (D.D.C. 1982). (citations omitted.) The notice included the names of the bankruptcy judge, the trustee, and Gregory's attorney, and presumably any of them could have helped Lawrence obtain a copy of the plan or informed it as to the plan's proposal concerning its claim. If Lawrence had made any inquiry following receipt of the notice, it would have discovered that it needed to act to protect its interest.

705 F.2d at 1123 (emphasis added).

**[7]** The reasoning of *In re Gregory* is controlling here, not only because it is law of the circuit, but because it's entirely consistent with *Mullane* and the more than a half century of due process caselaw that follows it. If a party is adequately notified of a pending lawsuit, it is deemed to know the consequences of responding or failing to respond, even if gaining actual knowledge requires inquiry into court files, hiring a lawyer or conducting legal research. Indeed, it would be virtually impossible to operate a legal system if due process required more notice than that.

**[8]** As noted, Funds here did receive actual notice of Espinosa's bankruptcy case; we know this both from documents in the record, which show receipt, and from the fact that Funds presented a proof of claim. Because "due process does not require actual notice," *Jones* v. *Flowers*, 547 U.S. 220, 225 (2006), it follows a fortiori that actual notice satisfies due process. We find the argument that the Constitution requires something *more* than actual notice strained to the point of the bizarre.

The notices Funds received also warned of the consequences of failing to object—which is more than due process requires. A creditor receiving such notice would have known that its debt could be adversely affected by the proposed plan, and that it needed to file an objection if it wished to avoid that result.[5] Funds raised no such objection, nor did it appeal the order confirming the plan. We cannot say that Funds was taken by surprise or was denied due process. Quite the contrary: Funds appears to have been a willing participant, perfectly happy to receive the benefits of the Chapter 13 plan, but unwilling to suffer the consequences of its failure to file an objection.

The three circuits that have held that the creditor is denied due process in circumstances such as these appear to have a different understanding of what due process requires. As best we can follow their reasoning, it is that a creditor who is entitled to heightened notice by statute is also entitled to such heightened notice as a matter of due process. This footnote from *In re Banks*, the first circuit case to adopt this novel approach, tries to explain this rationale: "We do not today hold that the Constitution in itself requires a summons and service of process to discharge student loan debt. We merely confirm that where the Bankruptcy Code and Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect." 299 F.3d at 303 n.4. *Accord In re Hanson*, 397 F.3d at 486 ("student loan creditors justifiably rely on the explicit notice provisions of the Bankruptcy Code and Rules and have no reason to act until the service of a summons for an adversary proceeding apprises them that their

---

[5]Even after the bankruptcy court confirmed the plan, Funds had an opportunity to dispute it. The notice attached to the proposed plan specifically advised that the "amount of the claim [Funds] filed differs from the amount listed for payment in [Espinosa's] plan," and warned Funds that its "claim will be paid as listed in the plan" unless the Chapter 13 Trustee received notice within 30 days from Funds that it "wishes to dispute the above stated treatment of the claim." Funds did not object.

property rights may be affected."); *In re Ruehle*, 412 F.3d at 683. The Seventh Circuit in *Hanson* goes so far as to say that "Hanson's failure to serve [the creditor] with a summons and an adversary proceeding complaint effectively denied [the creditor] the opportunity of presenting an objection prior to the adjudication of its rights." 397 F.3d at 486 (citing *Mullane*, 339 U.S. at 313-14).

We do not find this reasoning persuasive and thus have no occasion to call for rehearing en banc to consider overruling *In re Gregory*. To begin with, we find it both wrong and dangerous to hold that the standard for what amounts to constitutionally adequate notice can be changed by legislation. The constitutional standard, as we understand it, requires that a party affected by the litigation obtain sufficient notice so that it is able to take steps to defend its interests. Congress can, of course, give rights to additional notice, but we find it difficult to see how this can affect the floor provided by due process— either to increase or diminish it.

**[9]** Even if Congress could affect the constitutional standard, it didn't do so here: Congress made it quite clear that a creditor need only get ordinary notice of a Chapter 13 plan to be bound by its terms. That Congress provided heightened notice requirements for an adversary proceeding, which didn't take place here, is of no consequence. Had there been an adversary proceeding, and had the creditor not been served with a complaint and summons, the creditor may then have been free to ignore the adversary until it was properly served. But here (and in the similar cases from other courts) there was no adversary proceeding; the creditor's rights were cut off by the Chapter 13 plan, precisely as specified in the notice the creditor did receive. We reject the idea that a creditor who is in the business of administering student loans has a *constitutional* right to ignore a properly served notice that clearly

specifies that its debt will be discharged on successful completion of the plan.[6]

In short, we find the due process argument even less persuasive than the statutory argument, despite the eagerness of some of our sister circuits and other courts to adopt it. What appears to be going on is that courts are re-casting what may be a simple statutory violation as a denial of due process so that they can set aside judgments with which they're unhappy. This approach is not consistent with the theory of objective judging, which calls for us to apply the law fairly to the facts and let the chips fall where they may. We see no reason to reconsider the approach we adopted in *In re Gregory*, which we believe is fully consistent with the Supreme Court's teachings in *Mullane*, and with fairness and justice as well.

---

[6]Our Bankruptcy Appellate Panel's opinion in *In re Repp* suffers from the same defect in reasoning. The opinion there bemoans "an unfair Catch-22" and even a "double Catch-22" that the student loan creditor supposedly confronts. *Educ. Credit Mgmt. Corp.* v. *Repp* (*In re Repp*), 307 B.R. 144, 153 (9th Cir. BAP 2004). We don't see any Catch-22: A creditor who wants to force the debtor to follow the statutory procedure for discharging student debt need only object to the proposed plan on the ground that there has not been a proper undue hardship finding. The debtor must then procure such a finding by bringing an adversary proceeding and serving the creditor with a complaint and summons. As Judge Ryan points out in his well-reasoned dissent, the creditor in *Repp* (like the one in our case) was not subjected to any kind of unfairness:

> It should be pointed out that ECMC was a creditor, had filed a claim, and knew or should have known that its rights could be affected by the plan. It cannot stick its head in the sand, ignore the plan terms, and later claim foul play because it is adversely impacted by the plan. Due process does not place substance over form. Here, the substance is that ECMC had actual knowledge of the plan terms and chose to default. It cannot now seek a second bite of the apple by way of a due process argument.

*Id.* at 156. The *Repp* majority would have done well to adopt the view of its dissenting colleague and follow circuit law as announced by *Pardee* and *In re Gregory*. *In re Repp* and cases following it are overruled. *See, e.g.*, *Sallie Mae Servicing Corp.* v. *Ransom* (*In re Ransom*), 336 B.R. 790, 797-98 (9th Cir. BAP 2005).

### Conclusion

It is apparent that a number of courts in our circuit, including the district court below, are uncomfortable with the practice of some Chapter 13 debtors to seek to discharge their student debts by working them into their Chapter 13 plans. Some bankruptcy judges have announced that they won't confirm plans that seek to discharge student loan debts without an adversary proceeding, even when the creditor fails to object to the plan. *See, e.g.*, *Patton* v. *U.S. Dep't of Educ.* (*In re Patton*), 261 B.R. 44, 48 (Bankr. E.D. Wash. 2001); *In re Webber*, 251 B.R. 554, 557-58 (Bankr. D. Ariz. 2000). In fact, one of these opinions has suggested that inclusion of a "nondischargeable" debt in a Chapter 13 plan "may be the subject of sanctions." *In re Patton*, 261 B.R. at 48.

**[10]** For reasons explained above, we view matters quite differently. Our long-standing circuit law holds that student loan debts can be discharged by way of a Chapter 13 plan if the creditor does not object, after receiving notice of the proposed plan, *Pardee*, 193 F.3d at 1086, and that such notice is not constitutionally inadequate. *In re Gregory*, 705 F.2d at 1123. We find it highly unlikely that a creditor whose business it is to administer student loans will be misled by the customary bankruptcy procedures or somehow be bamboozled into giving up its rights by crafty student debtors. If the creditor is notified and fails to object, it is doubtless the result of a careful calculation that this course is the one most likely to yield repayment of at least a portion of the debt. In such circumstances, bankruptcy courts have no business standing in the way. Cases such as *In re Webber* and *In re Patton* are, to that extent, overruled.

**[11]** The district court's judgment reversing the bankruptcy court is reversed. The case is remanded to the bankruptcy court for reinstatement of the order enforcing the discharge injunction and for a determination whether the creditor acted willfully in violating the injunction under the standard we

announced in *Zilog, Inc.* v. *Corning* (*In Re Zilog, Inc.*), 450 F.3d 996 (9th Cir. 2006).[7]

**REVERSED and REMANDED.**

---

[7]As we held in *Zilog*:

> A party who knowingly violates the discharge injunction can be held in contempt under section 105(a) of the bankruptcy code. *See In re Bennett*, 298 F.3d at 1069; *Walls* v. *Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) (holding that civil contempt is an appropriate remedy for a willful violation of section 524's discharge injunction). In *Bennett*, we noted that the party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the sanctions are justified. We cited with approval the standard adopted by the Eleventh Circuit for violation of the discharge injunction: "[T]he movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction."

450 F.3d at 1007 (citing *Renwick* v. *Bennett* (*In re Bennett*), 298 F.3d 1059, 1069 (9th Cir. 2002) (citing *Hardy* v. *United States* (*In re Hardy*), 97 F.3d 1384, 1390 (11th Cir. 1996)). That the creditor may have believed that the discharge was inappropriately entered, or that it could be set aside under Rule 60(b), is of no consequence. A creditor is not free to violate the discharge injunction because it has doubts as to the validity of the discharge. If the creditor believes the discharge is defective, it may petition the bankruptcy court to reopen and set aside the judgment under Rule 60(b), but it may not commence collection proceedings unless and until the court grants such relief. If the bankruptcy court finds that the creditor here willfully violated the injunction, it shall, at the very least, impose sanctions to the extent necessary to make Espinosa whole. *See* 2 Collier Bankruptcy Manual (3d rev. ed.) ¶ 524.02[2][c] ("In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees.") (footnote omitted).