FILED

NOT FOR PUBLICATION

DEC 27 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-12-1501-KuBaPa |
| WILLIAM CHIONIS and HELEN CHIONIS, | Bk. No.   SA 09-18254-ES |
| Debtors. | Adv. No.  SA 10-01591-ES |
| WILLIAM CHIONIS, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| JAMES R. STARKUS, | |
| Appellee. | |

Argued and Submitted on November 21, 2013
at Pasadena, California

Filed – December 27, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

Appearances:     Anerio Ventura Altman of Lake Forest Bankruptcy argued for appellant William Chionis; appellee James R. Starkus argued pro se.

Before: KURTZ, BALLINGER[**] and PAPPAS, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**]Hon. Eddward P. Ballinger, Jr., United States Bankruptcy Judge for the District of Arizona, sitting by designation.

**INTRODUCTION**

Debtor William Chionis ("Chionis") filed a complaint seeking an award of contempt sanctions against one of his creditors, James Starkus ("Starkus"), based on Starkus' violation of the discharge injunction under 11 U.S.C. § 524(a)(2).[1] The bankruptcy court entered a judgment after trial in favor of Starkus, finding that Starkus intended the actions he took that violated the discharge injunction but also finding that Starkus did not subjectively know the injunction applied to him. Chionis appealed.

The bankruptcy court's finding on Starkus's subjective knowledge was clearly erroneous, so we must REVERSE that finding. Accordingly, we will VACATE the judgment in favor of Starkus and REMAND, so that the bankruptcy court can make necessary findings of fact regarding whether Chionis proved that he incurred damages as a result of Starkus' violation of the discharge injunction and, if so, the amount of those damages.

**FACTS**

The essential facts are not in dispute. In 2006, Starkus loaned $70,000 to Divine Products, Inc. ("Loan"). Chionis, who had an interest in and served as an officer of Divine Products, agreed to guarantee Divine Products' Loan obligations ("Debt").

The guaranty agreements Chionis signed provided in part that any bankruptcy by Divine Products would not discharge or

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

otherwise affect the Debt. The guaranties also contained a provision stating that the guarantor's liability would not be discharged except by full satisfaction of the Debt. According to Starkus, he bargained for this language to be included in the guaranties in part to protect himself from any bankruptcy filing by Chionis and from the effect of any bankruptcy discharge Chionis might receive. In Starkus' own words, he was concerned at the time of the 2006 Loan transaction that "you could just discharge somebody through bankruptcy and all their money would be lost." Hr'g Tr. (May 21, 2012) at 30:8-9.

In August 2009, Chionis and his wife (collectively, "Debtors") commenced their bankruptcy case by filing a chapter 7 petition.[2] Starkus was duly scheduled on the Debtors' bankruptcy schedules, and Starkus received the standard form notice from the bankruptcy court regarding the filing of the Debtors' chapter 7 bankruptcy case. That form notice was substantially the same as Official Form 9A[3] and advised Starkus of the date of the Debtors' meeting of creditors pursuant to § 341(a) ("§ 341(a) Hearing"). The form notice further advised Starkus of the deadline for filing complaints regarding the Debtors' right to a discharge.

---

[2]Some of the background facts we refer to herein are drawn from the Trial Declaration of William Chionis filed in the underlying adversary proceeding on April 20, 2012 (Adv. Dkt. No. SA 10-01591-ES, Doc. No. 8). This declaration was not included in the parties' excerpts of record, but we can and do take judicial notice of this document and others included in the bankruptcy court's case and adversary dockets. See Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 909 n.4 (9th Cir. BAP 2011).

[3]Use of the Official Forms is mandated by Rule 9009.

3

Starkus attended the Debtors' § 341(a) Hearing, but he did not otherwise actively participate in the bankruptcy case. Specifically, he never attempted to challenge in the bankruptcy court the Debtors' right to discharge the Debt.

On February 8, 2010, the bankruptcy court entered a standard form chapter 7 discharge order granting the Debtors a discharge pursuant to § 727. The bankruptcy court sent Starkus a copy of the discharge order, and Starkus has not disputed that he received a copy of the order. The form order was substantially the same as Official Form 18 and, on the reverse side, described in lay terms the effect of the discharge as follows:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. . . . A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

Reverse Side of Discharge Order (February 8, 2010).

The reverse side of the discharge order further explained that "[m]ost, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed." The reverse side also provided a list of common types of nondischargeable debts. The concluding paragraph on the reverse side cautioned that its explanation of the effect of the discharge was a general summary of the law and encouraged interested parties to consult an attorney if they needed to ascertain the precise effect of the discharge to their specific situation.

In July 2010, notwithstanding his prior receipt of the

4

discharge order, Starkus filed a complaint against Chionis in the Small Claims Court for the City of Temecula, California (Case No. TES10001805). Starkus sought to recover $7,500, the maximum jurisdictional amount covered by the Temecula Small Claims Court, on account of the Debt. In his small claims complaint, Starkus acknowledged Chionis' bankruptcy and that Chionis had told him that he no longer could collect on the Debt. But he attempted to counter this acknowledgment by referencing the "no discharge" provisions in the Loan documents.

The small claims complaint contained a notice that the matter was set for trial on November 5, 2010. In response, Chionis filed in the small claims court a request that the case not proceed to trial. In his request, Chionis explained that the Debt had been discharged in bankruptcy. Nonetheless, the small claims court issued an order on September 27, 2010, setting a hearing on Chionis' request for November 5, 2010, at the same time as trial was scheduled.

The Debtors' bankruptcy counsel sent a letter to Starkus on August 27, 2010, stating that the Debt had been discharged in the Debtors' bankruptcy case and that the no discharge language in the Loan documents was void and unenforceable as a matter of law. The letter further warned Starkus that he was subject to being sanctioned for filing the small claims complaint and would be subject to further sanctions if he did not dismiss the small claims case within ten days. Thereafter, the Debtors retained new counsel who sought and obtained from the bankruptcy court, on November 4, 2010, the day before the trial in the small claims case, an order enjoining Starkus from proceeding with the small

5

claims case.

Starkus was given advance written and telephonic notice of the bankruptcy court hearing on the Debtors' motion for an injunction, but Starkus apparently did not attend the bankruptcy court hearing and did not attempt to respond in writing to the injunction motion. This seems odd, given that Starkus later testified in the bankruptcy court that he filed the small claims case primarily because he was seeking a simple way, without an attorney, to obtain a judge's opinion on the validity of the no discharge language in the Loan documents. As he later explained in his appeal brief, he sought an "unbiased third party legal opinion." Aple. Br. (May 21, 2013) at 6:54. The bankruptcy court's tentative ruling, which is incorporated into the court's order granting the injunction, addressed this very issue. It stated that the no discharge language was unenforceable, citing Bank of China v. Huang (In re Huang), 275 F.3d 1173, 1177 (9th Cir. 2002).

The next day, November 5, 2010, Starkus and the Debtors' counsel both traveled to the small claims court with the intent to appear at the small claims hearing and trial. However, before the hearing and trial occurred, the Debtors' counsel approached Starkus and informed him of the new injunction. While Starkus initially responded by disputing the bankruptcy court's authority to determine the dischargeability of the Debt, he ultimately left the small claims court before his case was called, so neither the trial nor the hearing took place.

On December 10, 2010, the Debtors filed a complaint seeking contempt sanctions against Starkus. In the complaint's prayer

for relief, the Debtors requested compensatory damages, punitive damages and attorney's fees and costs. However, the joint pretrial order entered on May 10, 2012, which by its explicit terms superseded the parties' pleadings, did not reference punitive damages as a legal or factual issue. Nor did the pretrial order mention punitive damages in any other way.[4]

The bankruptcy court held trial in the adversary proceeding on May 21, 2012.[5] After the parties presented their evidence, the court announced its ruling from the bench, including its findings of fact and its conclusions of law.

The court found that Starkus knew about the Debtors' bankruptcy case, knew about the discharge order and intended the conduct – the filing of the small claims complaint – which violated the discharge order. But the court also found that Starkus subjectively believed (albeit incorrectly) that, as a result of the no discharge language in the Loan documents, the discharge order did not preclude him from collecting the Debt. Because of this subjective belief, the court inferred that Starkus did not actually know that the discharge injunction applied to the Debt.

According to the bankruptcy court, the Ninth Circuit Court

_____

[4]As a result, the Debtors abandoned their request for punitive damages. In any event, citing Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1195 (9th Cir. 2003), the bankruptcy court ruled at the conclusion of trial that punitive damages can not be awarded as part of the bankruptcy court's imposition of civil contempt sanctions. Chionis has not challenged this ruling on appeal.

[5]Chionis' wife Helen passed away in March 2012, so Chionis proceeded to trial as the sole surviving plaintiff.

7

of Appeals decision in <u>ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)</u>, 450 F.3d 996, 1007 (9th Cir. 2006) required Chionis, as the party seeking to demonstrate contempt, to prove by clear and convincing evidence that Starkus: "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." <u>Id.</u> Specifically with respect to the first <u>ZiLOG</u> prong, the bankruptcy court explained, Chionis needed to establish that Starkus subjectively knew that the discharge applied to the Debt. The bankruptcy court ultimately held that Chionis had not met his burden as to the first <u>ZiLOG</u> prong.

Based on its findings of fact and conclusions of law, the bankruptcy court concluded that no civil contempt sanctions would be imposed against Starkus for his violation of the discharge order. On September 14, 2012, the bankruptcy court entered its judgment in favor of Starkus, and on September 30, 2012, Chionis timely appealed.[6]

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Did the bankruptcy court commit reversible error by addressing the contempt proceedings in an adversary proceeding instead of a contested matter?

---

[6]Chionis sought and obtained leave from the bankruptcy court for an extension of time to file his notice of appeal. That time extension rendered Chionis' notice of appeal timely. <u>See</u> Rule 8002(c)(2).

8

Did the bankruptcy court abuse its discretion by not imposing any sanctions against Starkus for his violation of the discharge injunction?

**STANDARDS OF REVIEW**

The bankruptcy court's decision as to whether sanctions should be imposed for a violation of the discharge injunction is reviewed for an abuse of discretion. <u>Nash v. Clark Cnty. Dist. Atty's. Office (In re Nash)</u>, 464 B.R. 874, 878 (9th Cir. BAP 2012).

A bankruptcy court abuses its discretion if its decision is based on an incorrect legal rule, or if its findings of fact were illogical, implausible, or without support in the record. <u>Id.</u> (citing <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**DISCUSSION**

**A. Procedural Issue – Adversary Proceeding vs. Contested Matter**

Generally speaking, civil contempt sanctions for the violation of the discharge injunction must be sought by contested matter rather than an adversary proceeding. <u>See</u> <u>Barrientos v. Wells Fargo Bank, N.A.</u>, 633 F.3d 1186, 1190-91 (9th Cir. 2011). In fact, a bankruptcy court may dismiss a complaint seeking contempt sanctions for violation of the discharge injunction and thereby require the party seeking sanctions to proceed by motion instead. <u>Id.</u> at 1188.

Chionis, the appellant herein, initiated the adversary proceeding and never challenged in either the bankruptcy court or on appeal the utilization of an adversary proceeding to seek civil contempt sanctions for Starkus' noncompliant conduct. We

9

have declined to remand solely on the ground that the bankruptcy court determined the debtor's discharge violation claim in an adversary proceeding rather than a contested matter, when the appellant did not object to the bankruptcy court's use of the adversary proceeding to dispose of the matter. See In re Nash, 464 B.R. at 879 (declining in the "interests of justice" to remand simply because bankruptcy court heard and determined discharge violation claim in an adversary proceeding rather than in a contested matter).

Nonetheless, because we are vacating and remanding on other grounds as discussed below, the bankruptcy court on remand should issue an order converting the adversary proceeding to a contested matter and should determine the unresolved damages issue in that contested matter.

**B. Substantive Issue – Knowledge of Discharge Injunction**

Pursuant to § 524(a)(2), the discharge of a debtor in bankruptcy prohibits creditors from making any attempt to collect on prepetition debts, unless those debts have been excepted from the discharge. In re ZiLOG, Inc., 450 F.3d at 1007; Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1067 (9th Cir. 2002).

However, there is no private right of action for violation of the discharge injunction; a party seeking to enforce the discharge injunction must seek civil contempt sanctions. Barrientos, 633 F.3d at 1188-89; Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 506–07 (9th Cir. 2002). Civil contempt sanctions may be imposed for violation of the discharge injunction when the creditor willfully or knowingly violates a definite and specific court order. In re ZiLOG, Inc., 450 F.3d at 1007; In re Bennett,

10

298 F.3d at 1069. In this context "willful" essentially means that the alleged contemnor "knew of the injunction." In re ZiLOG, Inc., 450 F.3d at 1008.

The discharge injunction constitutes a definite and specific court order for purposes of contempt proceedings. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1190-91 (9th Cir. 2003) ("Because the 'metes and bounds of the automatic stay are provided by statute and systematically applied to all cases,' . . . there can be no doubt that the automatic stay qualifies as a specific and definite court order."); In re ZiLOG, Inc., 450 F.3d at 1008, n.12 (for purposes of determining whether a violation of a court order constitutes civil contempt, there is "no material difference between the discharge injunction and the automatic stay.").

As the bankruptcy court correctly explained, the Ninth Circuit Court of Appeals in In re ZiLOG held that the party seeking to demonstrate contempt in the discharge injunction context must prove by clear and convincing evidence that the alleged contemnor: "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." In re ZiLOG, Inc., 450 F.3d at 1007. In turn, the first prong of the ZiLOG test requires the moving party to show that the alleged contemnor actually knew that he or she was subject to the terms of the discharge order. Id. at 1008.

The evident concern underlying ZiLOG's first prong is that creditors should not be held in contempt for violation of an order unless they actually are aware that the subject order applied to them. Id.; see also In re 1601 W. Sunnyside Dr. #106,

11

LLC, 2010 WL 5481080, at *4 (Bankr. D. Idaho 2010) (citing In re ZiLOG and noting that Ninth Circuit has been "reluctant to hold an unwitting creditor in contempt."). Because the discharge injunction is imposed by statute and also because discharge orders typically do not identify the specific creditors or claims subject to the discharge injunction, In re ZiLOG apparently reasoned that receipt of a discharge order sometimes may not, by itself, be sufficient to prove that a particular creditor was subjectively aware of the discharge injunction's applicability to its claim:

> To be held in contempt, the [alleged contemnors] must not only have been aware of the discharge injunction, but must also have been aware that the injunction applied to their claims. To the extent that the deficient notices led the [alleged contemnors] to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness.

In re ZiLOG, Inc., 450 F.3d at 1009, n.14 (emphasis added).

The bankruptcy court here applied the correct legal standard in determining whether it could impose sanctions against Starkus. The court explicitly cited to In re ZiLOG, Inc., and it recited the legal standard set forth in ZiLOG for the imposition of discharge violation contempt sanctions.

But we must overturn the bankruptcy court's finding regarding Starkus' actual knowledge of the discharge order and its application to the Debt. It is undisputed that Starkus received the form notice regarding the Debtors' bankruptcy filing and later received a copy of the bankruptcy court's form discharge order. In addition, Starkus admitted at trial, while under oath, that he knew and understood at the time the general

12

effect of the discharge on claims like his: that the discharge rendered such claims uncollectible. Starkus admitted that, prior to the Debtors' bankruptcy filing, he sought to implement a contractual workaround to avoid the specific legal effect of any potential future discharge Chionis might obtain. Thus, he clearly knew and understood the legal effect of the discharge: "you could just discharge somebody through bankruptcy and all their money would be lost." Hr'g Tr. (May 21, 2012) at 30:8-9.

The bankruptcy court in essence found that Starkus' (incorrect) belief regarding the impact of the no discharge language in the Loan documents negated any knowledge he otherwise had regarding the applicability of the discharge order to the Debt. We disagree. It is undisputed that the Debtors through their counsel warned Starkus, both orally and in writing, and on more than one occasion, that the no discharge language in the Loan documents was invalid. It also is undisputed that Starkus received notice of the Debtors' motion for an order enjoining the small claims lawsuit from going forward. Yet Starkus chose to ignore these warnings, as well as the proceedings seeking to enforce the discharge order, and instead chose to press forward with his small claims lawsuit up until moments before the trial.

Starkus never attempted to appear before the bankruptcy court to assert his legal theory regarding the no discharge language, even though the form notice of the Debtors' bankruptcy filing advised him of the deadline for filing complaints regarding the Debtors' right to a discharge and even though the notice of the Debtors' injunction motion invited a response from Starkus.

13

The only evidence in the record indicating that Starkus believed he could enforce the Debt without violating the discharge order was his own self-serving testimony. But given the undisputed facts regarding all that Starkus knew and the undisputed facts regarding Starkus' conduct, we hold that the overwhelming weight of the evidence in the record is contrary to the bankruptcy court's finding that Starkus did not know that the discharge order precluded him from attempting to collect the Debt. Thus, we conclude that the bankruptcy court's finding on this point was illogical, implausible and without support in inferences that reasonably could be drawn from the facts in the record. See Hinkson, 585 F.3d at 1262.

Indeed, Starkus' knowledge and conduct in this case is similar to the knowledge and conduct of the contemnors in McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949). McComb in relevant part held that a court may impose civil contempt sanctions without finding that the contemnor specifically intended to violate the court's order. In McComb, certain employers were accused of violating a court order entered to enforce a floor on employee wages and a ceiling on non-overtime work hours imposed by the Fair Labor Standards Act ("Act"). The order specifically enjoined the employers from violating the wage floor and hours ceiling in the Act.

Instead of complying with the court order, the employers attempted to evade the legal effect of the order by drafting and implementing new employee compensation plans containing terms that, while not specifically enjoined, effectively enabled the employers to pay their employees less than the amount required by

14

the Act's wage floor and to force their employees to work more non-overtime hours than permitted under the Act's hours ceiling.

The employers argued that the provisions in their new employee compensation plans were not specifically enjoined, so they could not be held in contempt. But the McComb court disagreed and ruled that the district court should have held the employers in contempt:

> We need not impeach the findings of the lower courts that respondents had no purpose to evade the decree, in order to hold that their violations of it warrant the imposition of sanctions. They took a calculated risk when under the threat of contempt they adopted measures designed to avoid the legal consequences of the Act. Respondents are not unwitting victims of the law. Having been caught in its toils, they were endeavoring to extricate themselves. They knew full well the risk of crossing the forbidden line. Accordingly where as here the aim is remedial and not punitive, there can be no complaint that the burden of any uncertainty in the decree is on respondent's shoulders.

Id. at 193; see also Donovan v. Sureway Cleaners, 656 F.2d 1368, 1372-73 (9th Cir. 1981) (analogous facts and holding).

Similar to the contemnors in McComb, Starkus knew and understood the legal effect of the order he is charged with violating. But instead of complying with the discharge order, he opted to rely upon the untested contractual no discharge language he had implemented in an attempt to work around the unequivocal legal impact of the discharge. As McComb aptly explained:

> It does not lie in [the contemnors'] mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law . . . .

McComb, 336 U.S. at 192; see also Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1205 & n.7 (9th Cir. 2008), aff'd,

15

559 U.S. 260 (2010) ("A creditor is not free to violate the discharge injunction because it has doubts as to the validity of the discharge.").

In re ZiLOG, Inc. is distinguishable. There, the chapter 11 debtor ZiLOG and the bankruptcy court had sent the creditors charged with violating the discharge injunction misleading notices indicating that their employment-related claims would not be affected by ZiLOG's bankruptcy. In re ZiLOG, Inc., 450 F.3d at 998, 1003, 1005. When the creditor-employees later attempted to sue ZiLOG in state court, ZiLOG filed an action against the creditor-employees in the bankruptcy court seeking to enforce the discharge injunction contained in ZiLOG's confirmed chapter 11 plan of reorganization. Id. at 998-1000. The bankruptcy court decided the action in ZiLOG's favor and imposed sanctions against the creditor-employees for violating the discharge injunction. Id. at 999-1000.

The Ninth Circuit Court of Appeals vacated the sanctions award and remanded for further proceedings. According to the Court of Appeals, the bankruptcy court on remand needed to determine whether the creditor-employees actually were aware of the discharge injunction and its applicability to their claims. Id. at 1009. In a related footnote, the Court of Appeals pointed out that the notices sent to the creditor-employees clouded the willfulness issue and opined that "[t]o the extent that the deficient notices led the [creditor-employees] to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness." Id. at 1009 n.14.

16

Here, were are not dealing with a complex chapter 11 reorganization plan or with misleading notices from the debtor or the bankruptcy court suggesting that the creditors were not affected by the bankruptcy. To the contrary, the form chapter 7 discharge order issued by the bankruptcy court here indicated that the Debt had been discharged, and Starkus admitted that he knew and understood the general effect of the discharge. Furthermore, the Debtors through their counsel advised Starkus more than once that the no discharge language in the Loan documents was invalid and unenforceable.[7]

We acknowledge that some of the language in In re ZiLOG, Inc. is broad and arguably could be interpreted as precluding a finding of willfulness and hence precluding the imposition of contempt sanctions whenever the alleged contemnor testifies that, for whatever reason, he or she did not subjectively believe that the discharge applied to his or her claim, no matter how misguided or unreasonable that belief might have been. However, we do not believe that In re ZiLOG, Inc. intended such an expansive reading of its comments, given that such a reading seemingly would render the bankruptcy discharge all but

---

[7]In re Nash, 464 B.R. at 880, also is distinguishable. There, we affirmed the bankruptcy court's determination that the Hard Rock Café and Casino had not violated the discharge injunction because Hard Rock had not taken any action to collect the subject debt after Nash's discharge order was entered. We also affirmed on an alternate ground, holding that the evidence in the record there established that neither of In re ZiLOG, Inc.'s prerequisites for imposition of contempt sanctions had been satisfied.

17

toothless.[8]

In any event, regardless of these competing concerns, we hold that In re ZiLOG, Inc. did not preclude the bankruptcy court here from finding that Starkus willfully violated the discharge order, in light of the undisputed facts and circumstances regarding Starkus' knowledge and conduct.

**C.  Damages Issue**

Only those actual damages, including attorney's fees, incurred as a result of the noncompliant conduct can be recovered as part of a compensatory civil contempt sanctions award.  See In re Dyer, 322 F.3d at 1195.  To award such sanctions, the court must find that actual damages flowed from the contemnor's noncompliant conduct.  Id.; see also Rosales v. Wallace (In re Wallace), 2012 WL 2401871, at *8 (Mem. Dec. 9th Cir. BAP 2012) (holding that bankruptcy court must make sufficient findings to support its damages award).

Here, even though the bankruptcy court erred when it ruled that Starkus was not liable for contempt sanctions because of his

---

[8]An expansive reading of In re ZiLOG, Inc. also would appear to conflict with Barrientos, 633 F.3d at 1190, which held in part that a chapter 7 debtor "cannot seek a second-order injunction" to enforce the discharge injunction against a specific creditor. According to Barrientos, permitting a debtor to seek such an injunction is superfluous, repetitive and would afford no additional relief given that the debtor, by operation of § 524(a)(2), already has been granted a discharge injunction upon entry of the discharge order.  Id.  But if In re ZiLOG, Inc. is broadly interpreted, there will be cases in which the debtor will not be able to enforce the § 524(a)(2) discharge injunction without a "second-order" injunction, because the debtor otherwise will not be able to establish that the noncompliant creditor knew and subjectively believed that the § 524(a)(2) discharge injunction applied to that creditor's claim.

18

subjective beliefs concerning the discharge order, this does not mean that Starkus necessarily is liable for contempt sanctions. The bankruptcy court never made definitive findings regarding whether Chionis incurred compensable damages as a result of Starkus' noncompliant conduct and, if so, what that amount of damages was. At the conclusion of trial, the court came close to rendering findings on the damages issue when it stated as follows:

> I noticed as an aside, because it's not germane to my ultimate decision, that there was reference to damages. I don't -- I looked all over. I couldn't actually find specific evidence regarding damages. I may have overlooked that. I assume there were some compensatory damages at least relating to maybe attorney's fees.

Hr'g Tr. (May 21, 2012) at 45:14-19. Ultimately, however, the court declined to render damages findings and instead relied on its finding regarding Starkus' knowledge and belief concerning the discharge to support its ruling that Starkus was not liable for contempt sanctions.

On remand, the bankruptcy court will need to determine whether, based on the evidence presented at trial, Chionis proved that he incurred damages as a result of Starkus' violation of the discharge injunction and, if so, the amount of damages Chionis incurred.[9]

---

[9]At oral argument before this Panel, counsel for Chionis asserted that the bankruptcy court did not permit Chionis to present evidence of damages at the time of trial. But we have not found anything in the record to support this assertion. We leave it to the bankruptcy court on remand to decide what, if any, additional opportunity ought to be afforded to the parties to submit evidence concerning the extent of Chionis' damages.

19

**CONCLUSION**

For the reasons set forth above, we REVERSE the bankruptcy court's finding regarding Starkus' subjective knowledge, we VACATE the bankruptcy court's judgment in favor of Starkus, and we REMAND for further proceedings consistent with this decision.