Joseph SCIARRINO, et al., Plaintiffs,

v.

Henry MENDOZA, et al., Defendants.

No. CV–95–6137–REC.
Bankruptcy No. 94–11900 B–7F.
Adv. No. 95–1125.

United States District Court,
E.D. California.

Aug. 13, 1996.

**542**

David Ray Jenkins, Motschiedler Michaelides and Wishon, Fresno, CA, for plaintiffs.

Blake A. Meyen, McCormick Barstow Sheppard Wayte and Carruth, Fresno, CA, for defendants.

## ORDER AFFIRMING BANKRUPTCY COURT DECISION

COYLE, District Judge.

On May 20, 1996, the Court heard the above captioned appeal from the bankruptcy court. Upon consideration of the oral and written record, the Court affirms the bankruptcy court decision for the reasons stated herein.

### I. *Overview*

In the decision of the bankruptcy court from which the Sciarrinos appeal, Judge Ford granted summary judgment for the Mendozas (the debtors) on the grounds that a post-discharge judgment lien obtained by the Sciarrinos was invalid. The bankruptcy court found that the Sciarrinos "willfully" violated the debtors' discharge rights under § 524 of the Bankruptcy Code. Judge Ford awarded sanctions in the form of attorneys'

fees and costs. Upon review of the oral and written record, this Court affirms the bankruptcy court's decision to grant summary judgment and to award attorneys' fees and costs.

The first issue presented is whether the bankruptcy court correctly ruled that a creditor holding a pre-petition attachment lien violated the discharge injunction under 11 U.S.C. § 524(a) by obtaining a post-discharge judgment against the debtor after the creditor's claim had been discharged? The Court finds that the bankruptcy court correctly decided that the Sciarrinos violated the debtors' § 524 discharge rights by obtaining a judgment against the debtors post-discharge. The Sciarrinos had alternative means available to reduce their attachment lien to judgment prior to the discharge. These included seeking relief from the automatic stay, filing an objection to the discharge under § 523(a), or filing an objection to the discharge under § 727(a). The Sciarrinos were unsuccessful in pursuing the first option and failed to pursue the second or third option. Therefore, the bankruptcy court correctly held that since the attachment lien was discharged, it should not have been reduced to a judgment lien after the discharge. Accordingly, this Court affirms the finding of the bankruptcy court.

The second question presented is whether the bankruptcy court properly imposed sanctions pursuant to 11 U.S.C. § 105 as a consequence for violating the discharge injunction? The Court finds that the bankruptcy court properly found a "willful" violation of the debtors' § 524 discharge rights when the Sciarrinos pursued a judgment lien after the discharge occurred. Accordingly, the bankruptcy court was justified in awarding attorney fees and costs pursuant to § 105.

### II. *Standard of Review*

■ The standard of review for a bankruptcy court's decision on a motion for summary judgment is *de novo*. *In re United Energy Corp.*, 944 F.2d 589, 593 (9th Cir. 1991). The *de novo* standard of review applies to the determination of whether an attachment lien survives discharge.

In reviewing the bankruptcy court's finding of a willful violation of § 524, a district court applies the clearly erroneous standard of review. *In re McHenry*, 179 B.R. 165, 167 (9th Cir. BAP 1995) (reviewing a willful violation of the automatic stay). The abuse of discretion standard applies to the bankruptcy court's decision to impose sanctions for violating § 524 and in the determination of reasonable attorneys fees. *In re Ramirez*, 183 B.R. 583 (9th Cir. BAP 1995) (abuse of discretion standard applies to bankruptcy court's contempt sanctions); *In re Vasseli*, 5 F.3d 351, 352 (9th Cir.1993) (award of prevailing party's attorneys fees in § 523 action).

### III. *Facts*

On September 22, 1992, Bonita Mendoza sued the Sciarrinos in the Madera County Superior Court to foreclose on a mechanics lien for $32,987.50 plus interest (the foreclosure action). The suit related to a single family house construction contract into which the Sciarrinos entered with Mendoza, a licensed general contractor. On February 2, 1994, a jury rendered a judgment in the amount of $34,792.29 against Mrs. Mendoza and in favor of the Sciarrinos, finding that Mendoza had breached the contract. The Sciarrinos were awarded the said sum plus attorneys fees for a total of approximately $96,000.00 on March 16, 1994.

On September 28, 1992, six days after the Mendozas filed the foreclosure action, Mr. and Mrs. Mendoza transferred title to two parcels of real property in Madera County to Bonita Mendoza's parents, Mr. and Mrs. Blevins, for consideration of $89,000. These properties consisted of the Mendoza residence and an unimproved lot. The debtors used that money to pay their attorneys during the foreclosure action and the conveyance action, described below.

On June 3, 1993, the Sciarrinos brought suit against the Mendozas and the Blevins seeking to set aside this transfer as a fraudulent conveyance (the conveyance action). In that action, the Sciarrinos obtained a writ of attachment attaching the subject real property. Notice of such attachment was duly recorded in Madera County on October 29, 1993. The recording of the notice of attachment created and perfected an attachment lien on the subject real property. As discussed below, no proceeding of any type was ever brought by the Mendozas or their Chapter 7 trustee attempting to avoid this attachment lien as a preference, or otherwise.

On April 11, 1994, after a trial, the Madera County Superior Court issued a "Proposed Statement of Decision" regarding the Sciarrino's fraudulent conveyance lawsuit against the Mendozas and the Blevins. This "Proposed Statement" indicated that the conveyance was fraudulent.

On April 22, 1994, the Mendozas filed a petition for relief under Chapter 7 of the Bankruptcy Code. On April 28, 1994, the Madera County Superior Court issued a final "Statement of Decision." Superior Court Judge Moffat expressly stated, "If such an order [Statement of Decision] is deemed a violation of the automatic stay, this order is moot." ER 75:24–76:1. Based on this condition, the Mendozas assert that the final decision by the Superior Court was not entered because the automatic stay was already in effect.

Although the trial judge in the fraudulent conveyance lawsuit had instructed the Mendoza and Blevins not to transfer the subject properties further, on April 11, 1994, the Blevins transferred the subject properties back to the Mendozas. Mr. and Mrs. Mendoza then purported to transfer one of the parcels, the unimproved lot, to the Sciarrinos for the purported price of $99,000. They did this by unilaterally executing and recording a deed to the Sciarrinos. The Sciarrinos claim they never agreed to accept title to such property for that value, arguing that the property transferred was only worth approximately $47,500, the value placed on the property by the appraiser hired by the Chapter 7 trustee.

On July 28, 1994, the Sciarrinos filed a motion for relief from the automatic stay to proceed with the trial on punitive damages in the conveyance action and for final entry of the decision and judgment. That motion was denied by Bankruptcy Judge Brett Dorian.

On October 26, 1994, and pursuant to a "Notice of Trustee's Intent to Abandon Property" the Chapter 7 trustee abandoned his interest in both of the subject parcels of real property. Among the reasons given for the abandonment was the existence of the Sciarrino's lien upon the properties pursuant to their writ of attachment.

On December 30, 1994, a discharge was entered in the Mendoza's Chapter 7 case, pursuant to § 727. The Sciarrinos did not file an objection to the debtors' discharge under § 727 and did not file a complaint to have their debt determined to be nondischargeable under § 523. Accordingly, debtors' personal liability arising from the foreclosure action and the conveyance action was discharged.

On January 31, 1995, after the discharge, the Sciarrinos requested that a judgment in the conveyance action be entered by the Madera County Superior Court against the debtors. The judgment entered provides that Sciarrinos hold a "perfected" judgment lien for $96,709.93 plus interest, which relates back to the date of perfection of their attachment lien. In pursuing this judgment, the Sciarrinos relied on the advice of David R. Jenkins that obtaining such judgment would not violate Mr. and Mrs. Mendoza's bankruptcy rights. The Sciarrinos assert that the judgment does not impose personal liability on the Mendozas. Rather, they argue, it merely confirms the Sciarrinos' lien on the subject property and converts the lien from an attachment lien into a judgment lien.

The Mendozas immediately objected to the judgment. After attempting to meet and confer and attempting a settlement, the Mendozas filed suit. They were ultimately granted summary judgment by the bankruptcy court. The bankruptcy court affirmed the summary judgment after the Sciarrinos' request for reconsideration. The bankruptcy court also awarded attorneys' fees and costs of $2,849.25.

IV. *Discussion*

A. *Summary of the Arguments*

The Sciarrinos argue that the debtors have committed something called "lien laundering." Their theory goes as follows:

At the time the attachment lien was recorded, title to the subject property was vested in Mrs. Mendoza's parents who were also defendants in the fraudulent conveyance action. The parents transferred the property to the Mendozas shortly before the Mendozas filed their bankruptcy petition. Title transferred subject to the attachment lien. "The bankruptcy court's decision [under appeal] permits a party to, in effect, launder property and cleanse it of an attachment lien by the simple expedient of transferring it to someone about to file bankruptcy. As long as the attachment lien amount exceeds the value of the property, the Chapter 7 trustee will be unable to liquidate the property because it has an inconsequential value and benefit to the estate." See 11 U.S.C. § 554. Under the bankruptcy court's ruling in this case, the new owner of the property will emerge from bankruptcy owning the property free and clear of the attachment lien which, according to the bankruptcy court herein, cannot be enforced post discharge. This is precisely what has happened in this case. With all respect and deference to the bankruptcy court, the Sciarrinos are hard pressed to ascertain what public policy is furthered by permitting debtors to acquire property a week pre-bankruptcy and then cleanse it of an attachment lien created before they acquired the property. It would be curious, indeed, if the "fresh start" policy, which has been found insufficient to justify permitting Chapter 7 debtors to strip down liens ... were sufficient to permit a Chapter 7 debtor to strip off a lien which attached to property prior to the time the debtor acquired it.

On the other hand, the debtors assert that the bankruptcy court correctly applied the Bankruptcy Code to undisputed facts by holding that the Sciarrinos missed their opportunity to transform their attachment lien into an executable and enforceable judgment lien by not objecting to the discharge. The debtors argue that the Sciarrinos' failure to obtain a judgment prior to discharge resulted in their claim becoming unsecured and discharged despite the attachment lien. This is because any liability of the debtors resulting

from the foreclosure action judgment was discharged prior to the Sciarrinos' attempt to convert the attachment lien into a judgment lien. ⸕

Upon commencement of a bankruptcy, an automatic stay is imposed pursuant to § 362(a). The automatic stay enjoins certain actions by creditors during a bankruptcy proceeding. After the chapter 7 debtor receives a discharge under § 727, the automatic stay is replaced by a different injunction, § 524(a). Unless an objection to a chapter 7 individual debtor's discharge is filed pursuant to § 523(a) or § 727(a) within the time restraints of FRBP 4004, a chapter 7 individual debtor may be granted a discharge pursuant to § 727(b).

■■■ As the bankruptcy court here noted, and as was stated in *Matter of Paeplow,* 972 F.2d 730, 735 (7th Cir.1992), creditors in a situation such as the Sciarrinos can take any of three actions to protect their claims: 1) seek relief from the automatic stay to reduce the claim to judgment; 2) file a complaint to determine a debt non-dischargeable under § 523; and/or 3) file an objection to the discharge under § 727. The Sciarrinos failed to covert the attachment lien to a judgment lien under any of these three avenues available to them. As such, they were precluded from conversion of the lien once the discharge was issued. Accordingly, this Court affirms the holding of the bankruptcy court granting summary judgment.

### B. *Relief from the Automatic Stay*

■■ The Sciarrinos did file a motion for relief from the automatic stay to proceed with litigation. By that motion, the Sciarrinos sought relief from the stay to proceed with a trial on punitive damages and for entry of final judgment. The motion, however, was erroneously based on the premise that the April 28th Statement of Decision was valid. The Superior Court decision was mooted by its own terms, because the automatic stay was in place on April 22, 1994, before the final decision was issued on April 28, 1994. That stay prevented the judgment from being entered. By its own terms, the April 28th Statement of Decision is moot. It is clear that entry of the April 28 Statement

of Decision was in violation of the automatic stay imposed by § 362(a)(1) because it was the continuation of a pre-petition action to recover a claim against the debtors. *In re Schwartz,* 954 F.2d 569 (9th Cir.1992) held that a violation of the automatic stay imposed by § 362(a) is void, not voidable. In light of the fact that the final decision was never entered, the bankruptcy court was correct in its decision to deny relief from the automatic stay.

### C. *Objection to Dischargability under § 523 and § 727*

■ The bankruptcy court discussion explains that the Sciarrinos should have sought a stay of the discharge pursuant to § 523, appealed that order, and presented their argument based on *In re Wind Power Systems, Inc.,* 841 F.2d 288 (9th Cir.1988) and *In re Jenson,* 980 F.2d 1254 (9th Cir.1992). However, the Sciarrinos' reliance on those two cases is now moot, because the underlying claim has been discharged and the conveyance action is enjoined from continuing regardless of how the Sciarrinos characterize the judgment. This theory may have allowed the Sciarrinos to proceed to judgment before the entry of the debtors discharge. However, once the debtors' discharge has been granted, *In re Jenson* and *In re Wind Power Systems, Inc.* are no longer applicable. This is because creditors are enjoined by § 524 from collecting on pre-petition liabilities of a discharged debtor, however "creditors are not prohibited from executing a judgment lien against a discharged debtors property as long as the judgment was obtained before discharge." *Matter of Paeplow,* 972 F.2d 730, 735 (7th Cir.1992).

In its decision, the bankruptcy court correctly distinguished both of these Ninth Circuit cases. The bankruptcy court explained in detail that those two cases are limited to the avoidance of attachment liens as a preference under § 547 or § 544. Furthermore, the bankruptcy court correctly explained that both of those decisions did not discuss § 524 or § 727 or whether an attachment lien survives the § 727 discharge. Specifically, the holding in *In re Wind Power Systems, Inc.* is limited to the creation and perfection of at-

tachment liens in the context of a § 547 preference action and § 544 avoidance action. The bankruptcy court correctly refused to extend the *Wind Power Systems* result to the result requested by the Sciarrinos.

Likewise, the bankruptcy court properly refused to apply *Jenson*. The *Jenson* case simply follows the holdings in *Wind Power Systems* in its application to Nevada attachment law in a Chapter 11 case, not a Chapter 7 case. There is no discussion of the § 524(a) injunction or whether an attachment lien can survive the § 727 discharge. Also, the timing of a debtor's discharge and effect of a discharge is Chapter 7 is significantly different from that of Chapter 11. A Chapter 11 individual debtor receives his discharge upon plain confirmation which can take many months or even years.

██ The Sciarrinos argue that liens, including the attachment lien in question here, pass through bankruptcy unaffected by the discharge of § 727 or § 524(a). This is true for some liens, but not the type of attachment lien we are concerned with here. Consensual secured claims like perfected trust deeds and perfected security interests will pass through bankruptcy and survive discharge if not avoided under the Bankruptcy Code. Non-consensual judgment liens can also pass through bankruptcy and survive discharge unless avoided under the Bankruptcy Code. However, none of the cases cited by the Sciarrinos hold that attachment liens survive the discharge under § 727 or § 524(a). The decisions in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and *In re Thomas*, 883 F.2d 991 (11th Cir.1989), which are cited by the Sciarrinos for the proposition that liens survive the discharge, all dealt with duly perfected consensual liens such as trust deeds, mortgages, and perfected purchase money security interests in personal property. None dealt with an attachment lien that was not reduced to judgment prior to the discharge.

### D. Sanctions for Willful Violation of the Discharge Injunction

The second issue on appeal is whether the bankruptcy court abused its discretion in sanctioning the Sciarrinos for their willful violation of the discharge injunction. The clearly erroneous standard of review applies when reviewing the bankruptcy court's finding of a willful violation. The abuse of discretion standard applies to the imposition of sanctions after finding a violation.

The bankruptcy court entered an award of attorneys fees and costs of $2,849.25, pursuant to § 105(a). In making this award, the bankruptcy court found that the Sciarrinos' subsequent actions to avoid the provisions of the Bankruptcy Code resulted in a "willful" violation of § 524 of the Bankruptcy Code. The Ninth Circuit defined "willful" as it is used in section 362(h) for violations of an automatic stay. *In re Bloom*, 875 F.2d 224 (9th Cir.1989). The Ninth Circuit defined "willful violation" as follows:

A "willful" violation does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon finding that the defendant knew of the automatic stay and the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Id.*

██ In the case at bar, the bankruptcy court ruled that attachment liens not reduced to judgment prior to a debtor's discharge cannot be reduced to judgment post-discharge. Upon making that legal determination, the bankruptcy court looked at the facts in this case and found that the Sciarrinos willfully violated § 524. The factual determination that a willful violation occurred cannot be overturned unless it is clearly erroneous. There is no evidence of such error here. Moreover, this Court affirms the bankruptcy court on its award of attorney fees and costs as well, finding no abuse of discretion.

The Sciarrinos argue that they relied on the advice of counsel in obtaining the judgment and acted in good faith. The Sciarrinos put forth that the instant case merely represents a good faith disagreement between the

parties as to whether the discharge injunction proscribes actions to enforce a prebankruptcy attachment lien. The Sciarrinos assert that they "behaved in a restrained and responsible manner ... [and they] certainly should not be punished for having the courtesy to permit the Mendozas' counsel time to examine his case before commencing litigation." Thus, they conclude, they should not be sanctioned.

However, the Ninth Circuit has concluded that a creditor's good faith reliance on the advice of counsel is not a defense to a claim by the debtor for actual damages, costs and attorneys' fees based on a willful violation of the automatic stay under § 362(a). *In re Taylor,* 884 F.2d 478 (9th Cir.1989). Thus, a creditor's good faith is not relevant in determining whether a violation of the automatic stay occurred. Since § 524 is an injunction similar to the automatic stay, it is unlikely that the Ninth Circuit would hold otherwise with respect to a violation of § 524. Section 524 is the basis for a debtor's "fresh start." Thus, if a willful violation of the automatic stay occurs, the injured individual debtor must be awarded damages of attorneys' fees and costs reasonably incurred as a result of the violation of the stay. *In re Stainton,* 139 B.R. 232 (9th Cir. BAP 1992). Although there is no such mandatory provision under § 524, the fundamental policy behind § 362(h) in awarding mandatory damages is also justifiable for violations of § 524. Both are vital to the ability of the bankruptcy system to grant a fresh start.

Therefore, this Court concludes that the bankruptcy court did not abuse its discretion in awarding attorneys' fees and costs pursuant to § 105(a) as a sanction for the willful violation of § 524. Accordingly, the decision of the bankruptcy court is affirmed.

### V. *Conclusion*

This Court affirms the holding of the bankruptcy court in its entirety for the reasons stated above.