FILED

APR 04 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-13-1373-PaTaKu |
| MIGUEL ANGEL GRACIA, | Bankr. No. 09-40594-BR |
|         Debtor. | |
| FABIO BANEGAS; GREGORY L. DOLL, | |
|         Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| MIGUEL ANGEL GRACIA, | |
|         Appellee. | |

Argued and Submitted on February 20, 2014
at Pasadena, California

Filed - April 4, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:    Ronald M. St. Marie of Doll Amir Eley LLP argued for appellants Fabio Banegas and Gregory L. Doll; Steven A. Schwaber argued for appellee Miguel Angel Gracia.

Before: PAPPAS, TAYLOR and KURTZ, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellants Fabio Banegas ("Banegas") and Gregory L. Doll ("Doll" and, together, "Appellants") appeal the order of the bankruptcy court finding them in contempt for violation of the discharge order entered in the chapter 7[2] bankruptcy case of debtor Miguel Gracia ("Gracia").  We AFFIRM.

**FACTS**

Gracia filed a chapter 7 bankruptcy petition on November 9, 2009.  He did not list Banegas as a creditor on his schedules. Gracia received a discharge on March 11, 2010, and the bankruptcy case was closed on March 21, 2010.

On October 7, 2010, represented by his attorney Doll, Banegas filed a complaint (the "Original Complaint") in Los Angeles Superior Court against Gracia alleging claims for fraud, breach of contract, and conspiracy to commit fraud (the "State Court Proceedings").  The Original Complaint included the following allegations:

6.    In November 2004, [Banegas] loaned [Gracia] $7,000 from [Banegas'] checking account.

7.    [Banegas] and [Gracia] agreed that [Gracia] would invest said money into [Gracia's] business transactions, and that [Banegas] would receive a return on his investment every three to four months.  In reality, [Banegas] received a return at irregular intervals.

8.    [Banegas] is informed and believes that [Gracia] invested the money, and would periodically pay commissions to [Banegas].

9.    Most of the commissions paid to [Banegas], in addition to other savings, were reinvested by Defendant and amounted to approximately $45,000 by the end of 2009.

---

[2]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.

-2-

10. As a form of collateral for the money invested by [Banegas, Gracia] gave [Banegas] checks to guarantee payment of the $45,000.

11. In 2009, [Banegas] requested full payment of the $45,000, but only received $10,000 from [Gracia].

12. In or about November of 2009, [Gracia] agreed that, by the end of February 2010, [Gracia] would pay the remaining $35,000 to [Banegas].

13. By the end of February 2010, however, [Gracia] failed to return the remaining $35,000 to [Banegas], as agreed. At considerable time and expense, [Banegas] was able to collect only $5,000.

Original Complaint at 3, October 7, 2010.

On January 10, 2011, Gracia filed a motion to reopen his bankruptcy case to add Banegas as a creditor. On March 1, 2011, Appellants filed an opposition to this motion suggesting that Gracia had concealed assets. Gracia responded on March 2, 2011, denying that he had concealed assets. The bankruptcy court reopened the case on March 31, 2011. The case was again closed on April 21, 2011.

On October 26, 2012, Gracia filed two motions in the bankruptcy court: a second motion to reopen case ("Second Reopen Motion"), and a motion for a temporary restraining order to halt the State Court Proceedings and to hold Appellants in contempt for violation of the injunction arising from entry of the discharge order in the bankruptcy case ("Contempt Motion").

On October 30, 2012, Appellants responded to the Second Reopen and Contempt Motions. They generally argued that, in the State Court Proceedings, Banegas was pursuing the recovery of post-petition debts evidenced by the bounced checks given to him by Gracia after the bankruptcy, which debts they claimed had not

-3-

been discharged.

The bankruptcy court held its first hearing on the Second Reopen and Contempt Motions on November 7, 2012. After hearing from counsel, the court concluded that, based on the facts alleged in the Original Complaint, Banegas was indeed asserting a prepetition claim against Gracia stemming from Banegas' payment of the $7,000 to Gracia in 2004, and that assertion of such claims amounted to a violation of the discharge injunction. The bankruptcy court therefore ordered that the State Court Proceedings be stayed but, assuming there was a proper basis to do so, directed Appellants to amend the complaint to recover only post-petition debts. The bankruptcy court gave clear instructions to Banegas and Doll regarding the contents of any amended complaint: "By December 7th you'll file an amended complaint in the Superior Court . . . and make it very clear that that complaint will only deal with the . . . events that happened post-petition . . . as long as there's no allegations of any obligations of this debtor prepetition." Hr'g Tr. 21:4-22, November 7, 2012. The court continued the hearing on the Second Reopen and Contempt Motions.

On November 9, 2012, Appellants filed a motion in state court for leave to file a First Amended Complaint ("FAC"). The state court granted leave on February 20, 2013, and the FAC was filed in the state court. Dissatisfied with its contents, Gracia submitted a copy of the FAC to the bankruptcy court on March 2, 2013. The FAC alleged, among other facts, that:

6. In November 2004, [Banegas] invested $7,000 through [Gracia] based on the representation that said money would be invested by [Gracia] and earn

-4-

a higher rate of return than interest earned from a bank account.

7. Specifically, [Banegas] and [Gracia] agreed that [Gracia] would "invest said money into loan transactions, and that [Banegas] would receive a return on his investment every three to four months. In reality, [Banegas] received a return at irregular intervals.

8. [Banegas] is informed and believes that [Gracia] invested the money in A to Z Cash, which [Banegas] now understands is a business controlled by [Gracia's] daughter, Massiel Gracia. Periodically, [Gracia] would pay money earned from the investment to [Banegas].

9. Most of the returns on the initial investment paid to [Banegas], in addition to other savings, were reinvested by [Gracia] on [Banegas'] behalf. Eventually said amounts totaled approximately $45,000 by the end of 2009.

10. In 2009, [Banegas] requested full payment of the $45,000, yet initially received $10,000 from [Gracia].

11. After November 4, 2009, [Gracia] agreed that, by the end of February 2010, [Gracia] would personally pay the remaining $35,000 to [Banegas]. In consideration for this, [Banegas] agreed to forbear on any immediate collection efforts to recover the debt owed by A to Z Cash or [Gracia's] daughter.

12. By the end of February of 2010, however, [Gracia] failed to return the remaining $35,000 to [Banegas], as agreed. At considerable time and expense, [Banegas] was able to collect only $5,000. To assure future payments, [[Gracia] agreed to issue, and after November 4, 2009 did issue, personal checks in the amount of $5,000 each, totaling $30,000.

13. On or about April 29, 2010, [Banegas] again agreed to pay Plaintiff the remainder of the debt in two installments of $15,000.

FAC at 3, November 9, 2012.

At the continued hearing on the Second Reopen and Contempt Motions, held on March 19, 2013, the bankruptcy court reviewed the FAC and found that it also alleged facts stating a claim in

-5-

violation of the discharge injunction. The court ordered that the bankruptcy case be reopened and ruled that the FAC violated the discharge injunction. The court gave Appellants one last opportunity to prepare another amended complaint, to be presented first to the bankruptcy court for review, that omitted the offensive allegations. The hearing was continued again.

As directed, Appellants submitted a proposed Second Amended Complaint ("SAC") to the bankruptcy court for review on April 25, 2013. The hearing concerning the SAC, Second Reopen Motion and Contempt Motion occurred on May 7, 2013. In its order granting the Second Reopen Motion on May 16, 2013, the bankruptcy court determined that the SAC, as presented, did not violate the discharge injunction, that the State Court Proceedings could go forward, and that there would be a continued hearing on sanctions for violation of the discharge injunction.

The bankruptcy court held a final hearing on July 23, 2013. The court granted the Contempt Motion; it awarded Gracia damages based on the attorney fees and costs he had incurred in prosecuting the Contempt Motion, but declined any award for his fees and costs incurred in the State Court Proceedings. The bankruptcy court entered an order on August 5, 2013, imposing the compensating sanctions against Appellants, jointly and severally, in the amount of $13,673.00. The order recited, in part, that:

> [Appellants] violated the statutory discharge injunction imposed under 11 U.S.C. § 524(a)(2) by filing their original Complaint and their First Amended Complaint in the Los Angeles Superior Court case entitled Fabio B[a]negas v. Miguel Gracia, Superior Court case no. 10CB4343.
>
> These violations were willful on [Appellants' part.]

-6-

Appellants filed a timely notice of appeal of the bankruptcy court's order on August 9, 2013.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court clearly erred when it determined that Appellants willfully violated the discharge injunction.

Whether the bankruptcy court abused its discretion when it determined that Appellants were in contempt.

**STANDARDS OF REVIEW**

The bankruptcy court's finding that a willful violation of the § 524 discharge injunction has occurred is reviewed for clear error, and its imposition of sanctions for contempt is reviewed for abuse of discretion. Sciarrino v. Mendoza, 201 B.R. 541, 543 (E.D. Cal 1996). A finding is clearly erroneous if it is illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc). In applying the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." Id. at 1262. If the correct legal rule was applied, we then consider whether its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. Only in the event that one of these three apply are we then able to find that the

bankruptcy court abused its discretion. Id.

## DISCUSSION

### A.

In a chapter 7 case, with exceptions not relevant here, "[t]he [bankruptcy] court shall grant the debtor a discharge." § 727(a). When entered, this order "discharges the debtor from all debts that arose before the date of the [bankruptcy filing]." § 727(b). To give the discharge teeth, § 524(a)(2) prescribes that the discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" See Aldrich & Imbrogno (In re Aldrich), 34 B.R. 776, 779 (9th Cir. BAP 1983) (explanation of how §§ 524 and 727 work together).

Unlike § 362(k), addressing violations of the § 362(a) automatic stay, there is no provision in the Code providing a specific remedy for violations of the § 524(a) discharge injunction. Instead, a discharge violation must be pursued via a motion invoking the bankruptcy court's contempt powers embodied in § 105(a). In re Nash, 464 B.R. at 879-80 (citing Walls ex rel Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002) and Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002)).

To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful." In re Nash, 464 B.R. at 880. The Ninth Circuit applies a two-part test to determine whether the willfulness standard has been met: (1) did the alleged offending party know that the discharge injunction

-8-

applied; (2) and did such party intend the actions that violated the discharge injunction?  Id. at 880 (citing Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1205 n.7 (9th Cir. 2008), aff'd, 559 U.S. 260 (2010)); see also, Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006).  In applying the second prong of this test, the bankruptcy court's focus is not on the offending party's subjective beliefs or intent, but on whether the party's conduct in fact violated the order at issue.  Bassett v. Am. Gen. Fin. (In re Bassett), 255 B.R. 747, 758 (9th Cir. BAP 2000), rev'd on other grounds, 285 F.3d 882 (9th Cir. 2002).  "A party's negligence or absence of intent to violate the discharge order is not a defense against a motion for contempt."  Jarvar v. Title Cash of Mont., Inc. (In re Jarvar), 422 B.R. 242, 250 (Bankr. D. Mont. 2009) (citing Atkins v. Martinez (In re Atkins), 176 B.R. 998, 1009-10 (Bankr. D. Minn. 1994)); see Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996) (in determining "willful" violations of the discharge injunction, "the focus of the court's inquiry. . . is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue").

To support contempt, the moving party must prove by clear and convincing evidence that the offending party violated the discharge order.  In re Zilog, Inc., 450 F.3d at 1007; Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003).  The moving party bears this same burden to prove that sanctions are justified.  Espinosa, 553 F.3d at 1205 n.7.  If adequate proof is produced, the burden then shifts to the alleged offending party

to demonstrate why it was unable to comply with the discharge injunction. In re Bennett, 298 F.3d at 1069. If a bankruptcy court finds that a party has willfully violated the discharge injunction, it may award a debtor actual damages, punitive damages, and attorney's fees and costs. In re Nash, 464 B.R. at 880 (citing Espinosa, 553 F.3d at 1205 n.7). The bankruptcy court has broad discretion in fashioning a remedy for violation of the discharge injunction. In re Bassett, 255 B.R. at 758.

**B.**

The bankruptcy court did not clearly err in determining that Appellants violated the discharge injunction in this case. The discharge was entered in the bankruptcy case on March 11, 2010. On October 7, 2010, Appellants filed the Original Complaint in state court which alleged that Banegas had "loaned" $7,000 to Banegas in 2004; that over the years Gracia had invested the money; and that Banegas had demanded payment and Gracia did not make full payment. As the transactions between Banegas and Gracia were described in the Original Complaint, there is little room to argue that Appellants were not engaged in an effort to collect a debt arising before Gracia filed his bankruptcy petition that, pursuant to § 727(b), had been discharged.

On January 10, 2011, Gracia filed a motion to reopen the bankruptcy case and to add Banegas as a creditor. By responding to that motion on March 1, 2011, Appellants demonstrated that they were now aware of the bankruptcy case and the discharge order.

After Gracia filed the Contempt Motion on October 26, 2012, Appellants argued to the bankruptcy court that they were not

attempting to pursue collection of any prepetition debts in the State Court Proceedings. However, at the first hearing on the Contempt Motion on November 7, 2012, the bankruptcy court made its finding that, by asserting in the Original Complaint that the debt owed by Gracia to Banegas arose in 2004, and that it had not been repaid, Appellants had violated the discharge injunction. As a reaction to their argument that, they were attempting to collect post-bankruptcy debts from Gracia, the bankruptcy court gave clear, unambiguous instructions to Appellants to file an amended complaint in the State Court Proceedings to make it "very clear that . . . [the critical] events that happened post-petition . . . ." Hr'g Tr. 21:4-22, October 26, 2012.

Appellants ignored the bankruptcy court's admonition that any amended complaint should not allege that Gracia's obligations stemmed from his prepetition dealings with Gracia. Instead, Appellants filed the FAC which, while it deleted a direct reference to the 2004 "loan" from Banegas to Gracia, nonetheless contained allegations concerning Gracia's obligations to Banegas occurring before his bankruptcy. As a result, at the continued hearing on March 19, 2013, the bankruptcy court found that the FAC still contained offending allegations such that its filing was also a violation of the discharge injunction.

Appellants argued in the bankruptcy court, and now on appeal, that they never intended to collect a prepetition debt from Gracia. However, they conceded that the first two complaints were, at least, ambiguous. The bankruptcy court found no ambiguity in the allegations of the Original Complaint, and informed Appellants that the content of the complaint appeared to

-11-

bring into play a prepetition debt, and that, to avoid a discharge violation, it must be amended to make it "very clear" that no prebankruptcy obligations were targeted. Unfortunately, the bankruptcy court's instructions went unheeded because, at best, the FAC contained allegations that tied Gracia's execution of the post-bankruptcy checks to Banegas directly to Banegas' original "loan" to Gracia in 2004, and Gracia's alleged conduct in "investing" that money in his daughter's business, all events that preceded his bankruptcy filing. Because these allegations suggest that Banegas' right to collect from Gracia and his daughter stem from prebankruptcy events, they constitute a discharge violation as to Gracia.

The bankruptcy court determined that, in the FAC, Banegas was again attempting to collect a prepetition debt owed to him by Gracia. Since the discharge applies to "debts," we refer to the Supreme Court's explanation of the meaning of that term in the Bankruptcy Code:

> A "debt" is defined in the Code as "liability on a claim," § 101(12), a "claim" is defined in turn as a "right to payment," § 101(5)(A), and a "right to payment," we have said, "is nothing more nor less than an enforceable obligation." Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 559, 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990).

Cohen v. de la Cruz, 523 U.S. 213, 218 (1998).

Here, Banegas asserted in the FAC that he had provided funds to Gracia in 2004 that originally totaled $7,000, FAC at ¶ 6; that over time, those funds, with interest and investment returns, amounted to $45,000, FAC at ¶ 9; and that, prepetition in 2009, "[Banegas] requested full payment of the $45,000, yet initially received $10,000 from [Gracia]." FAC at ¶ 10. Fairly

-12-

construed, these allegations in the FAC assert that Gracia is indebted to Banegas stemming from his receipt of the original tender of funds in 2004, and that Banegas made a demand that Gracia repay him before Gracia's bankruptcy. The FAC also elaborates the difficulties Banegas encountered in recovering the debt prepetition. ¶¶ 11-12. It is only in ¶ 12 that Banegas alleges that Gracia had tendered checks to Banegas in payment of this obligation "after November 9, 2009," the filing date of Gracia's petition. While Appellants refuse to believe it, the FAC effectively alleges that Banegas was asserting a prepetition right to payment of a financial obligation by Gracia and that Banegas had attempted to recover from Gracia before Gracia issued the bounced checks.

We have examined the FAC and, giving it a fair reading, conclude that the bankruptcy court did not clearly err in finding that Appellants were attempting to collect prebankruptcy debts allegedly owed by Gracia to Banegas. As noted above, whether Appellants committed a violation of the discharge injunction is a finding of fact that we review for clear error. Sciarrino, 201 B.R. at 543. The bankruptcy court considered the two complaints filed by Appellants against Gracia, together with Appellants' explanation of the allegations in those complaints, and found that both asserted the right to enforce obligations of Gracia that had been discharged. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985).

Appellants also contend that the debt targeted by Banegas'

-13-

allegations in the FAC was really that of Gracia's daughter, and that Gracia, after his bankruptcy filing, had agreed to pay her debt to Banegas. But this argument is belied by the allegations of the FAC. Therein, it is clear that Banegas sought to recover funds from Gracia, not just from his daughter, based on the representation that Gracia invested in his daughter's business using money obtained from Banegas in 2004.

We agree with the bankruptcy court that the FAC alleges facts and seeks recovery from Gracia on account of a prepetition debt. Perhaps this was a drafting error by Doll, and this may have been remedied in the SAC. Nevertheless, Appellants filed the FAC in the State Court Proceedings after the bankruptcy court directed them to remove any prepetition allegations against Gracia. They submitted the FAC to the state court with the offending allegations against Gracia. The bankruptcy court did not clearly err in determining that there was a violation of the discharge injunction in the FAC.

That there was a violation of the discharge injunction in this case requires us to review the bankruptcy court's decision to find that Appellants' actions constituted contempt of the discharge order. According to the two-prong test in In re Nash, the bankruptcy court must find that: (1) Appellants knew that the discharge injunction prohibited their actions; and (2) Appellants intended the actions that violated the discharge injunction. 464 B.R. at 880.

On this record, there may be some doubt whether Appellants were aware of the Gracia bankruptcy filing and entry of the discharge order at the time they filed the Original Complaint.

-14-

However, there is no doubt that Appellants knew before filing the FAC that there was a bankruptcy and discharge injunction. Appellants nevertheless filed the FAC that continued to allege that Gracia's prepetition activities created a debt, in defiance of the bankruptcy court's instruction to remove any such allegations. We conclude that the first part of the Nash test is satisfied.

The second requirement of Nash is also met. It was not necessary that the bankruptcy court find that Appellants intended to violate the discharge injunction by filing the FAC. It was sufficient if they intended the acts that violated the injunction. In re Jarvar, 422 B.R. at 250. Nor is it relevant that Appellants might have not understood that their actions violated the injunction. Hardy, 97 F.3d at 1390. Here, the bankruptcy court had instructed Appellants to remove all references to Gracia's prepetition obligations in any amended complaint. Appellants seemed to ignore those instructions and asserted similar allegations in the FAC. Therefore, at least as to the FAC, the bankruptcy court did not abuse its discretion in finding that Appellants were in contempt for violating the discharge injunction or in awarding compensatory sanctions.[3]

**CONCLUSION**

We AFFIRM the order of the bankruptcy court.

---

[3] Appellants do not challenge the amount of the bankruptcy court's sanctions award on appeal, so we do not review that aspect of the order.